**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| Prinzo & Associates, LLC, on behalf of itself and all others similarly situated, | |
| Plaintiff, | Case No. 1:20-cv-3256 |
| v. | |
| BMO Harris Bank N.A.; BMO Financial Corp., a Delaware corporation; and Does 1-100, inclusive, | Hon. Gary S. Feinerman |
| Defendants. | |

**<u>DEFENDANTS BMO HARRIS BANK N.A. AND
BMO FINANCIAL CORP.'S MEMORANDUM
IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

August 14, 2020

BMO Harris Bank N.A.
BMO Financial Corp.
Jeffrey E. Jamison
Julie Rodriguez Aldort
BMO Harris Bank N.A.
111 West Monroe
Chicago, IL 60606
Tel. (312) 461-4694
Email: jeffrey.jamison@bmo.com
Email: julie.aldort@bmo.com

## I.    SUMMARY OF ARGUMENT

In Plaintiff's haste to join the stampede of 30+ similar class action lawsuits, it failed to include the fundamental allegations (i) establishing standing and/or (ii) stating a claim for relief.  In a bare-bones complaint, Plaintiff seeks "agent fees" for allegedly assisting an unnamed small business in applying for a Paycheck Protection Program ("PPP") loan administered by the Small Business Administration ("SBA"). Plaintiff's claims fail because: (i) there is no private right of action under the PPP (or its implementing legislation/ regulations); and (ii) Plaintiff has not satisfied the SBA's or even Plaintiff's own requirements for payment.

As shown below, SBA regulations require an agent, like Plaintiff, to provide to SBA a compensation agreement signed by the lender, agent, and applicant before it may receive a fee. Plaintiff does not (and cannot) allege it had or even attempted to enter into such an agreement with BMO Harris.  Indeed, Plaintiff agrees that it is only entitled to fees after it "submits the request for fee payment to the lender with the agent's fee based upon [] the work performed for the client," (Compl. ¶34) but Plaintiff does not (and cannot) allege he submitted such a request either. Consequently, Plaintiff does not allege an injury in fact, much less that its claims are ripe for adjudication and therefore this Court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

Additionally, Plaintiff fails to state a claim for relief under Fed. R. Civ. P. 12(b)(6) for multiple reasons, including that each of Plaintiff's state law claims (Counts I – IV) fail as an impermissible attempt to create a private right of action where none exists.

Plaintiff's claim for declaratory relief **(Count I)** fails because Plaintiff has no private right of action under the federal laws and regulations identified in its complaint. Plaintiff's breach of contract, third party beneficiary claim **(Count II)** fails because Plaintiff was not a direct beneficiary of the agreement between BMO Harris and the SBA.

Plaintiff's Illinois Consumer Fraud And Deceptive Business Practices Act (ICFA) claim **(Count III)** fails because Plaintiff: (i) lacks standing under ICFA as a non-resident business; (ii) does not assert any deceptive acts, much less with the required specificity; and (iii) does not allege any "unfair" conduct—there is nothing improper about BMO Harris's compliance with SBA regulations.

Plaintiff's unjust enrichment claim **(Count IV)** is dead on arrival because: (i) the other claims it is dependent on failed; and (ii) Plaintiff alleges that BMO Harris unjustly retained a benefit that Plaintiff is not entitled to receive. Plaintiff's conversion claim **(Count V)** faulters because Plaintiff does not (and cannot) allege a proper demand for payment.

## II.  BACKGROUND

### a.  CARES ACT CREATES NEW 7(A) LOAN PROGRAM

Paycheck Protection Program ("PPP"), established under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116- 136, provides emergency loans to small businesses to be administered by the SBA "under the same terms, conditions, and processes as a loan made under" the agency's established Section 7(a) loan program, except where Congress "otherwise provided." 15 U.S.C. § 636(a)(36)(B). *See also* 85 Fed. Reg. 20,812 (describing the PPP as a "new 7(a) loan program").

The SBA does not mandate the use of agents by either small businesses or lenders in

the submission of Section 7(a) loan applications. *See* 13 C.F.R. § 103.2(a). If either party elects

to use an agent, the Small Business Act and Part 103 of the SBA's regulations establish the

protocol that agents must follow when "[p]reparing or submitting on behalf of an applicant

an application for financial assistance of any kind" from the SBA. 13 C.F.R. § 103.1(b)(1).

To ensure compliance with this provision, the SBA requires that an agent "must

execute and provide to SBA a compensation agreement," which "governs the compensation

charged for services rendered or to be rendered to the Applicant or lender in any matter

involving SBA assistance." 13 C.F.R. § 103.5(a). The "SBA provides the form of

compensation agreement . . . to be used by Agents." *Id.* For Section 7(a) loans, agents must

use the SBA's Form 159 Fee Disclosure and Compensation Agreement ("Fee Agreement").

*See* Fee Disclosure and Compensation Agreement located at https://www.sba.gov/

document/sba-form-159-fee-disclosure-compensation-agreement (last visited August 10,

2020), attached as Exhibit A.  The SBA requires that the Fee Agreement "must be completed

and signed by the SBA Lender and Applicant whenever an Agent is paid by either the

Applicant or the SBA Lender in connection with the SBA loan application." *Id.* at 1. The SBA

requires that the Fee Agreement "must indicate that both parties agree … that the services

to be provided are accurately described, and that the agreement is otherwise consistent with

SBA requirements." 13 C.F.R. § 103.5(c).

In addition to establishing fees, the Fee Agreement serves the SBA's goal of reducing

fraud by agents and assists lenders in monitoring agents. Under the Fee Agreement, Lenders

are required to ensure "that the Agent performing services is not debarred, suspended,

proposed for debarment, declared ineligible, or voluntarily excluded from participation in

this transaction by any Federal department or Agency." Fee Agreement at 1. The requirement that the agent enter into a contract as a prerequisite to payment is designed to help "to mitigate the risk associated with loan agent participation, and to protect program participants and taxpayers from fraud and abuse." [1]

b. **AGENT FEES NOT MANDATED IN CARES ACT**

Because the PPP loan program is merely a "new 7(a) loan program," 85 Fed. Reg. 20,812, the SBA is directed to follow the requirements of that statute unless altered by the CARES Act. 15 U.S.C. § 636(a)(36)(B ). The CARES Act does not mandate the payment of agent fees. Instead, the Act provides that the SBA "shall reimburse" *lenders* for the cost of making loans by paying loan processing fees based on the amounts of the loans. 15 U.S.C.§ 636(a)(36)(P)(i). The CARES Act addresses agent fees only once, but merely to establish lower "Fee Limits" than those permissible for other Section 7(a) loans. Id. § 636(a)(36)(P)(ii) (agents "may not collect a fee in excess of the limits established by the [SBA].") The CARES Act does not otherwise alter the SBA's existing scheme for regulating agents and their compensation.

In the SBA's First Interim Final Rule ("IFR") on PPP, 85 Fed. Reg. 20,811 (Apr. 15, 2020), the SBA set limits on the "total amount that an agent may collect" for "assistance in preparing an application for a PPP loan." *Id.* at 20,816. The IFR states that agent fees, to the extent they are paid at all, will be paid out of the fees received by the lender from the SBA after funding. *Id.* Like the CARES Act, the IFR does not require lenders to pay fees to any

---

[1] SBA, Office of Inspector General, September 25, 2015, at https://www.sba.gov/ sites/ default/files/oig/Report_15-16_SBA_Needs_to_Improve_Its_ Oversight_ of_ Loan_Agents.pdf (last visited on August 11, 2020).In the 2015 report, the Office of the Inspector General of the Small Business Administration ("OIG") also explained, "that the primary responsibility for monitoring loan agents rests with the lenders." "SBA Needs to Improve its Oversight of Loan Agents."

person who claims to be an agent of a borrower. Nor does the IFR otherwise modify the SBA's preexisting regulations in Part 103 governing agent fees.

After the IFR was published, the Association of International Certified Public Accountants ("AICPA") warned CPAs, like Plaintiff, that "there is a possibility that you will not be paid for your services" assisting borrowers with PPP applications. *See* https://www.mncpa.org/mncpa/media/Documents-Shared/legislative/CPEA-special-report-sba-ppp-loans.pdf (last visited August 10, 2020), attached as Exhibit B. The AICPA also advised agents to "discuss this issue with clients and the banks to ensure there is an understanding, preferably in writing, as to how and when any fees will be paid." *Id.*

**c. ABSENCE OF CONTRACT OR DEMAND IN PLAINTIFF'S ALLEGATIONS**

Plaintiff does not allege that it entered into any agreement (or even any understanding) with BMO Harris to pay an agent fee for the alleged work, nor does Plaintiff even allege that it attempted to do so. Indeed, Plaintiff does not even allege that it informed BMO Harris, or that BMO Harris was somehow otherwise aware, that Plaintiff acted as an authorized agent for a PPP loan application.

Plaintiff alleges that, to be eligible to receive an agent fee, the agent must submit a "request for fee payment to the lender with the agent's fee based upon [] the work performed for the client." (Compl. ¶34.) Plaintiff, however, does not allege that it made such a request.

### III. ARGUMENT

**a. PLAINTIFF LACKS STANDING BECAUSE HE HAS NOT SUFFERED AN INJURY IN FACT, WHICH FAILURE DEPRIVES THIS COURT OF SUBJECT MATTER JURISDICTION**

Since federal courts may only act on actual cases or controversies, every plaintiff must establish the "irreducible constitutional minimum of standing," consisting of (1) an injury-in-

fact, (2) causation of that injury by the defendant's alleged conduct, and (3) redressability of that injury by the relief requested of the court. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). An injury-in-fact is "an invasion of a legally protected interest which is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Id.* at 560. "The party invoking federal jurisdiction bears the burden of establishing standing." *Id.* at 561. A plaintiff is also barred, under the ripeness doctrine, "from asserting an injury that depends on so many future events that a judicial opinion would be advice about remote contingencies." *Rock Energy Co-op. v. Vill. of Rockton*, 614 F.3d 745, 748 (7th Cir. 2010).

To be entitled to any fees, Plaintiff must follow the requirements set forth by the SBA. 13 C.F.R. § 103.5. Plaintiff, however, does not (and cannot) make any allegations confirming its compliance with the SBA's requirements, including the execution of a written compensation agreement between the Plaintiff and BMO Harris. Absent such an agreement, Plaintiff is not eligible for any fees. *See SGA Fin. Corp. v. U.S. Small Bus. Admin.*, 509 F. Supp. 392, 394–95 (D.N.J.), aff'd, 673 F.2d 1301 (3d Cir. 1981) ("The SBA requires all agents who assist applicants in the application process to sign an agreement ('SBA Form 159') not to charge fees for services in excess of what SBA deems to be reasonable and to refund any amounts paid in excess of this figure.")

Further, Plaintiff admits that agents are not eligible for fees until, at a minimum, "the agent submits the request for fee payment to the lender with the agent's fee based upon . . . the work performed." (Compl. ¶ 34.) Plaintiff, however, does not allege that it requested an agent fee or that the request was denied. It is a "general rule that a plaintiff who does not

apply for or request some benefit or action lacks standing to challenge the procedures or standards governing such applications or requests." *Baer-Stefanov v. White*, 773 F. Supp. 2d 755, 759-60 (N.D. Ill. 2011) (citing *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166-67 (1972); *Oriental Health Spa v. City of Fort Wayne*, 864 F.2d 486, 488-89 (7th Cir. 1988)).

Plaintiff's claims are not ripe and should be dismissed because any alleged harm rests upon contingent future events—compliance with the SBA requirements and demanding payment— that may not occur as anticipated, or that may not occur at all. *Citizens for Appropriate Rural Rds. v. Foxx*, 815 F.3d 1068, 1079 (7th Cir. 2016). BMO Harris respectfully requests that the Court dismiss the Complaint in its entirety under Rule 12(b)(1).

**b.  PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF**

The Complaint also fails under Rule 12(b)(6) and should be dismissed for failure to state a claim. A complaint "must contain 'enough facts to state a claim to relief that is plausible on its face' and also must state sufficient facts to raise a plaintiff's right to relief above the speculative level." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir.2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

*i.  PLAINTIFF'S CLAIM FOR DECLARATORY RELIEF (COUNT I) FAILS BECAUSE THERE IS NO PRIVATE RIGHT OF ACTION UNDER THE SBA OR CARES ACTS*

Count I fails there is no private right of action under either the Small Business or CARES Acts. The Declaratory Judgment Act is not an independent source of federal jurisdiction. *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). The availability of declaratory relief "presupposes the existence of a judicially remediable right." *Id.* "Where, as here, there is no private right of action available for an alleged statutory violation, a declaratory judgment claim cannot proceed." *Villasenor v. Am. Signature, Inc.*, No. 06 C 5493, 2007 WL 2025739, at *6

(N.D. Ill. July 9, 2007).

Congress did not create a private right of action under either the Small Business Act or CARES Act. *See, e.g., Crandal v. Ball, Ball & Brosamer, Inc.*, 99 F.3d 907, 909 (9th Cir. 1996) ("Other circuits that have considered the question have unanimously agreed that the Small Business Act does not create a private right of action in individuals.") (collecting cases from other circuits); *Profiles, Inc. v. Bank of Am. Corp.*, 2020 WL 1849710, at *4-7 (D. Md. Apr. 13, 2020) (in the only published decision to consider the issue to date, holding that the CARES Act does not include an express or implied private right of action).

### ii. <u>*THE LACK OF A PRIVATE RIGHT OF ACTION DEFEATS STATE-LAW CLAIMS*</u>

Plaintiff's state law claims based on alleged violations of the CARES Act/SBA regulations do not save its complaint. When a plaintiff's suit is "in essence a suit to enforce" a federal statute lacking a private right of action, it is "incompatible with the statutory regime" to allow common-law claims predicated on alleged violations of that federal standard. *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 118 (2011). Because the Plaintiff's state law claims seek only to enforce provisions of the CARES Act and the Small Business Act—where there is no private right of action, the Plaintiff's state law claims fail.

In *Astra*, the Supreme Court held that parties covered by federal legislation could not sue as third-party beneficiaries of contracts between the government and another party because Congress did not create a private right of action under the legislation. *Id.* at 1345.

The Plaintiff's ICFA, unjust enrichment and conversion claims similarly fail because they are predicated on BMO Harris's alleged violations of the CARES and Small Business Acts governing the payment of agent fees. Compl. ¶¶73-75, 82, 86-90. *See York v. Wellmark,*

8

*Inc.*, No. 416CV00627RGECFB, 2017 WL 11261026, at *20 (S.D. Iowa Sept. 6, 2017), aff'd, 965 F.3d 633 (8th Cir. 2020) (affirming dismissal of unjust enrichment claims that arise wholly from the alleged failure to comply with a federal statute that, like here, provides no private right of action). *Mankodi v. Trump Marina Assocs. LLC*, 525 Fed.Appx. 161, 166 (3d Cir. 2013) (affirming dismissal of plaintiff's causes of action for breach of contract and conversion because they were based on alleged violations of the Casino Control Act, which provides no private right of action.) The Complaint should be dismissed with prejudice for these reasons alone.

### iii. *PLAINTIFF'S STATE-LAW CLAIMS ALSO FAIL IN SUBSTANCE*

#### 1. PLAINTIFF'S BREACH OF CONTRACT THIRD PARTY BENEFICIARY CLAIM (COUNT II) FAILS BECAUSE PLAINTIFF WAS NOT A DIRECT BENEFICIARY

Count II, for breach of contract under a third-party beneficiary theory, fails for the additional reason that Plaintiff fails to plead the required elements for such a claim. Courts have established that, when a government contract incorporates statutory obligations and fails to demonstrate a clear intent to allow third-party enforcement, individuals who benefit from the contract are mere incidental beneficiaries and cannot sue under the agreement. *Astra*, 563 U.S. at 118-19. (2011).

To overcome the presumption of being an incidental beneficiary, a plaintiff must establish that the contract demonstrates a "clear intent" to confer direct beneficiary status on the plaintiff. *Vought v. Bank of Am., NA*, No. 10-2052, 2011 WL 13248532, at *3 (C.D. Ill. Apr. 6, 2011). "The question is not whether the contracts would benefit the [plaintiff], but whether the parties intended to confer an actionable right on the [plaintiff]." *D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474, 1479 (7th Cir. 1985). "To satisfy this requirement, the "implication that the

contract applies to third parties must be so strong as to be practically an express declaration." *Cohn v. Guaranteed Rate Inc.*, 130 F. Supp. 3d 1198, 1207 (N.D. Ill. 2015) (quoting *Ball Corp. v. Bohlin Bldg. Corp.*, 187 Ill.App.3d 175, 134 Ill.Dec. 823, 543 N.E.2d 106, 107 (1989)).

Plaintiff alleges that the contract to which it is a third party beneficiary is the "CARES Act Section 1102 Lender Agreement" (the "Lender Agreement") between BMO Harris and the SBA. Attached as Exhibit C. *See* Compl. ¶¶66-69. Plaintiff does not (and cannot) point to any language in the Lender Agreement that demonstrates a clear intent to permit agents to enforce the Lender Agreement. Indeed, the word "agent" does not appear in the Lender Agreement, and there is simply nothing remotely like an "express declaration" concerning agents or agent fees. Accordingly, Count II fails for this additional reason.

## 2. PLAINTIFF'S ICFA CLAIM FAILS (COUNT III) BECAUSE THE NON-RESIDENT PLAINTIFF LACKS THE REQUISITE CONSUMER NEXUS, AND OTHERWISE FAILS TO PLEAD ANY DECEPTIVE OR UNFAIR ACTS

Plaintiff, a business located in Pennsylvania, lacks standing to bring an ICFA claim for two reasons. First, because the Plaintiff is a business, Plaintiff must allege enough facts to satisfy the "consumer nexus test." *Vulcan Golf, L.L.C. v. Google Inc.*, 552 F.Supp.2d 752, 777 (N.D.Ill. 2008). Under this test, "[w]hena dispute under [ICFA regarding unfair practices] involves two businesses that are not consumers of each other's products, there must be some showing that the alleged conduct 'involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns.'" *AGFA Corp. v. Wagner Printing Co.*, 2002 WL 1559663, at *1–2 (N.D. Ill. July 10, 2002) (quoting *Lefebvre Intergraphics, Inc. v. Sanden Machine Limited*, 946 F.Supp. 1358, 1368 (N.D.Ill.1996)) Here, Plaintiff has not alleged a single fact to satisfy this test. Instead, Plaintiff relies on one conclusory statement that "Defendant's

conduct implicates consumer protection concerns generally." Compl. ¶ 77. This conclusory allegation is not enough. Rather, to establish "consumer protection concerns," a plaintiff "must plead and otherwise prove: (1) that [its] actions were akin to a consumer's actions to establish a link between [it] and consumers; (2) how defendant's representations ... concerned consumers other than [plaintiff]; (3) how defendant's particular breach of [contract] involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers." *Am. Roller Co., LLC v. Foster-Adams Leasing, LLP*, 472 F. Supp. 2d 1019, 1023 (N.D. Ill. 2007). Plaintiff's complaint is devoid of any allegations to support these requirements and should be dismissed.

Second, ICFA does not apply to non-residents unless Plaintiff alleges that the "the circumstances of the disputed transaction occurred 'primarily and substantially' in Illinois." *Haught v. Motorola Mobility, Inc.*, No. 12 C 2515, 2012 WL 3643831, at *3 (N.D. Ill. Aug. 23, 2012) (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100 (Ill.2005)). Plaintiff alleges that BMO Harris is headquartered in Illinois (Compl. ¶13), but that is not enough. *See Crichton v. Golden Rule Ins. Co., 576 F.3d 392, 396 (7th Cir.2009)* (the location of the defendant's business in Illinois is not dispositive of a nonresident claimant's standing to sue under the ICFA). Given the dearth of any allegations to suggest that the events in this matter primarily and substantially occurred in Illinois, this claim should be dismissed.

In addition to falling short of these threshold requirements, Count III fails for the additional reason that Plaintiff does not plead the required elements. To establish an ICFA claim, 815 ILCS 505/1 et seq., Plaintiff must allege: (1) the defendant committed a deceptive or unfair act or practice; (2) the defendant intended for the plaintiff to rely on the deception;

(3) the deception happened in the course of trade or commerce; and (4) the deception proximately caused the plaintiff's injury. Here, outside of a few conclusory statements, Plaintiff does not plead facts supportive of these elements.

As to Plaintiff's allegations of deceptive conduct (Compl. ¶ 75), "Rule 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud. Specifically, the complaint must identify the 'who, what, when, where, and how' of the alleged fraud." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). Here, the Complaint lacks any such allegations. The sole allegation of deception – BMO Harris' supposed representation that it was "processing SBA's PPP loans in a lawful manner" (Compl. ¶ 75) – is contradicted by Plaintiff's admission that BMO Harris stated on its website (and continues to so state as of the date of this filing) it "will not accept applications that are prepared by or with assistance of agents." Compl. ¶ 8 and n.2. Plaintiff's Complaint utterly lacks any facts alleging any statement made by BMO Harris to Plaintiff, that BMO Harris intended for the Plaintiff to rely on the unspecified deceptive statement, that the deception happened in the course of commerce, or that the deception proximately caused Plaintiff's injury.

Second, Plaintiff's allegations of "unfair" conduct fare no better. To support an ICFA claim based on unfair conduct, a plaintiff is required to demonstrate: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 647 (7th Cir. 2019). BMO Harris is effectively being accused of failing to pay an alleged agent who did not comply with the SBA requirements to receive payment, much less make a demand for payment. There is no identifiable Illinois

public policy that conflicts with the SBA requirements, nor could it be unfair, immoral, unethical, oppressive or unscrupulous for BMO Harris to comply with the governing law.

### 3. PLAINTIFF'S UNJUST ENRICHMENT CLAIM (COUNT IV) FAILS BECAUSE IT RELIES ON THE SAME DEFECTIVE ALLEGATIONS, AND OTHERWISE FAILS TO PLEAD THE ELEMENTS OF A VALID CLAIM.

Plaintiff's unjust enrichment claim fails for two reasons. First, under Illinois law, "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim stands or falls with the related claim. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (applying Illinois law). Here, Plaintiff's unjust enrichment claim is dependent on its declaratory judgment (Count I) and ICFA (Count II) allegations, which, as demonstrated above, both fail.

Second, Plaintiff has not pled any of the elements of unjust enrichment.   A claim for unjust enrichment exists when: (1) a defendant receives a benefit; (2) to the plaintiff's detriment; and (3) the defendant's retention of that benefit would be unjust. *Allant Grp., Inc. v. Ascendes Corp.*, 231 F. Supp. 2d 772, 774 (N.D. Ill. 2002).  Plaintiff fails to satisfy any of these elements because it has not established it is entitled to the alleged benefit BMO received. *Am. Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.*, No. 03 C 9421, 2004 WL 3363844, at *17 (N.D. Ill. Dec. 28, 2004) (dismissing unjust enrichment claim where plaintiff was not entitled to the benefits received).  Plaintiff's entitlement to the benefits depends on its compliance with the SBA regulations, as well as making a demand on BMO Harris, which it never alleges. *See*, *e.g.*, *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 943 (7th Cir. 2001) (affirming dismissal of unjust enrichment claim based on defendant's alleged actions that were authorized by federal law).

**4. PLAINTIFF'S CONVERSION CLAIM (COUNT V) FAILS BECAUSE PLAINTIFF FAILS TO ALLEGE IT DEMANDED PAYMENT OR THAT IT FOLLOWED SBA REGULATIONS**

Plaintiff does not (and cannot) plead the requisite elements for its Conversion claim, *i.e.*, that: (1) it has a right to the property at issue; (2) it has an absolute and unconditional right to the immediate possession of the property; (3) it made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. *Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735, 738 (7th Cir. 2016). First and most obvious, Plaintiff's claim fails because it does not plead that it made a demand for possession. *Am. Inter-Fid. Corp. v. M.L. Sullivan Ins. Agency, Inc.*, 2016 WL 3940092, at *7 (N.D. Ill. July 21, 2016) ("Failure to allege facts to satisfy the demand element is reason enough to dismiss Plaintiff's conversion claim."). As for the remaining elements, Plaintiff's failure to comply with the SBA regulations dooms its claim. Because Plaintiff did not comply with the SBA's regulations, Plaintiff does not have an unconditional and immediate right to payment of the agent fee. Finally, as the CARES Act sets only a cap on agent fees, but no floor, there is no "definite" amount to be awarded via a conversion claim. See, e.g., *Song v. PIL, L.L.C.*, 640 F. Supp. 2d 1011, 1017 (N.D. Ill. 2009) (dismissing conversion claim with prejudice where plaintiff "merely claim[ed] a right to an indeterminate sum of [money]")

## C. THE PLAINTIFF CANNOT STATE A CLAIM AGAINST BMO FINANCIAL CORP

For some unexplained reason, Plaintiff names the holding company of BMO Harris, BMO Financial Corp., but fails to assert any facts directed against BMO Financial Corp. While Plaintiff alleges generally that "Defendants" made PPP loans but refused to pay agent fees to Plaintiff, the Complaint does not allege that BMO Financial Corp. made any PPP

loans, much less the one to the Plaintiff's alleged client. Nor could Plaintiff, as BMO Financial Corp. did not make or fund PPP loans, and does not appear on the SBA's list of eligible PPP lenders. [2]

Accordingly, Plaintiff's allegations do not apply to BMO Financial Corp., and the claims against it should be dismissed.

## IV.    CONCLUSION

Not only does Plaintiff fail to allege the necessary elements for each of its claims, but Plaintiff's claims are unripe. Until Plaintiff complies with the SBA's requirements for agents and submits a demand for payment to BMO Harris, Plaintiff lacks Article III standing to pursue the claims asserted in the Complaint.  For these reasons, Plaintiff's claims should be dismissed with prejudice.

Respectfully submitted,

/s/Jeffrey E. Jamison
Jeffrey E. Jamison
Julie Rodriguez Aldort
BMO Harris Bank N.A.
111 West Monroe
Chicago, IL 60606
Tel. (312) 461-4694
Email: jeffrey.jamison@bmo.com
Email: julie.aldort@bmo.com

---

[2] See SBA, Lenders Participating in PPP by State (June 25, 2020), at
https://www.sba.gov/sites/default/files/2020-06/PPP_Lender_List_ 200625.pdf

# EXHIBIT A

**Fee Disclosure and Compensation Agreement**     OMB Control No. 3245-0201
For use with 7(a) and 504 Loan Programs          Expiration Date: 08/31/2021

_Purpose of this form_: The purpose of this form is to identify Agents and the fees and/or compensation paid to Agents by or on behalf of a small business applicant ("Applicant") for the purpose of obtaining or expediting an application for a loan guaranteed by the U.S. Small Business Administration (SBA). This is a statutory requirement under 15 U.S.C. 642. See 13 CFR Parts 103 and 120 and SBA's Standard Operating Procedure 50 10 for the rules governing compensation of Agents or SBA Lenders in connection with an SBA loan.

_Who must complete this form?:_ This form must be completed and signed by the SBA Lender and the Applicant whenever an Agent is paid by either the Applicant or the SBA Lender in connection with the SBA loan application. Each Agent paid by the Applicant to assist it in connection with its application must also complete and sign the form. When an Agent is paid by the SBA Lender, the SBA Lender must complete this form and the SBA Lender and Applicant must both sign the form. The SBA Lender must inform the Applicant in writing that the Applicant is not required to employ an Agent or representative (including the SBA Lender) to assist the Applicant with the SBA loan application.

Compensation must be disclosed on this form for the following services:

1. Loan packaging services, as defined in SOP 50 10, performed by an SBA Lender or other third party (This includes services performed by an individual/entity that is a Lender Service Provider (LSP) (7(a) only) or has an SBA-approved Professional Services Contract (504 only) with the SBA Lender who is acting as a loan packager or referral agent employed by the Applicant);
2. Financial statement preparation specifically for the loan application; and/or
3. Consulting, Broker, or Referral services paid by the Applicant, SBA Lender, or Third Party Lender (504 only).

Fees paid to the following individuals for their services in connection with the SBA loan application are not required to be disclosed on this form:

1. Applicant's accountant performing services in the normal course of business;
2. Any attorney in connection with the 7(a) or 504 loan closing;
3. A state-certified or state-licensed appraiser employed by the SBA Lender to appraise collateral;
4. An LSP performing services for the Lender under an SBA-reviewed LSP agreement (7(a) only) or an individual performing services for the CDC under an SBA-approved professional services contract (504 only);
5. An individual employed by the SBA Lender to perform a business valuation in connection with the SBA loan;
6. An environmental professional employed by the SBA Lender to conduct an environmental assessment of the collateral; and/or
7. A real estate agent who is receiving a commission for the sale of real estate.

_Instructions for completing this form_: The Agent must be identified, all services provided must be listed, and the party paying the fee and amount paid must also be disclosed (and itemized, when required). The SBA Lender must ensure that the Agent performing services is not debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal department or Agency. (_See_ www.sam.gov.) The SBA does not allow contingency fees (fees paid only if the loan is approved) or charges for services which are not reasonably necessary in connection with an application. A separate form is required for each Agent (including an SBA Lender when the SBA Lender performs packaging services) that has or will receive compensation as part of the transaction. However, all of the services provided by the same Agent may be listed on a single form.

If the compensation paid exceeds $2,500, the Agent must provide supporting documents that include: 1) a detailed explanation of the work performed; and 2) the hourly rate(s) and the number of hours spent working on each activity. The SBA Lender must ensure that the supporting documents are attached to this form. When a single provider charges an Applicant in connection with multiple applications, fees are aggregated to establish the $2,500 threshold for requiring supporting documents and a detailed explanation. Supporting documents and a detailed explanation are required even if the compensation is charged on a percentage basis.

All SBA Lenders must retain the original Form 159 in the loan file. 7(a) Lenders must submit a copy of each completed Form 159 to Fiscal Transfer Agent only once after there has been an initial disbursement on the loan in conjunction with its monthly 1502 report. CDCs must submit a copy of each completed Form 159 to SBA in its Annual Report for all of the 504 loans closed during the fiscal year being reported.

**Fee Disclosure and Compensation Agreement**
For use with 7(a) and 504 Loan Programs

OMB Control No.: 3245-0201
Expiration Date: 08/31/2021

❑ **7(a) loan**          ❑ **504 loan**

**SBA Loan Name:** _____

**SBA Loan Number (no spaces):** _____     **SBA Lender FIRS (no spaces):** _____

**SBA Lender Legal Name:** _____

**Services Performed by (Name of Agent):** _____

**Agent Contact Person:** _____

**Agent Address:** _____

**Type of Agent:**

❑ SBA Lender                     ❑ Consultant                          ❑ Third Party Lender ("TPL")

❑ Independent Loan Packager      ❑ Accountant preparing financial      ❑ Other: _____
                                    statements specifically for SBA loan
❑ Referral Agent/Broker             application

| Type of Service | Amount Paid by Applicant* | Amount Paid by SBA Lender* |
|---|---|---|
| Loan packaging | | |
| Financial statement preparation for loan application | | |
| Broker or Referral services | | |
| Consultant services | | |
| Other: _____ | | |

***The Agent may not be compensated by both Applicant and SBA Lender for the same service. Furthermore, any Agent employed by the SBA Lender must be paid by the SBA Lender and those fees cannot be passed on to the Applicant.**

**Total compensation paid by:**          **Applicant: $_____**          **SBA Lender: $_____**

❑ Itemization and supporting documentation is attached. (Itemization and supporting documentation is required if the compensation paid exceeds $2,500. Itemization must include: 1) a detailed explanation of the work performed; and 2) the hourly rate and the number of hours spent working on each activity.) Note: SBA, in its discretion, may request an itemization and supporting documentation for any fee charged in connection with an SBA loan application, regardless of the amount.

**For 504 loans only:**
❑ **CDC received referral fee from a TPL**                    **Amount of Fee: $_____**

**TPL Name:** _____

**TPL Address:** _____

**WARNING:  False certifications can result in criminal prosecution under 18 U.S.C. § 1001 and other penalties provided under law.**
Violation of any of the SBA Loan Program Requirements regarding SBA Form 159 and the related activities by the SBA Lender and/or an Agent may result in SBA's suspension or revocation of the privilege of conducting business with the SBA under 13 CFR Part 103.

**Applicant's Certifications**:   By signing this form, the Applicant certifies to SBA that the above representations and amounts are the only amounts paid (or that will be paid) by the Applicant in connection with the stated services and are satisfactory to the Applicant. The Applicant further certifies that a separate compensation agreement (SBA Form 159) has been executed for all Agents, as defined in 13 CFR § 103.1. If the certification is made by a legal entity (e.g. corporation, limited liability company), execution of the certification must be in the legal entity's name by a duly authorized officer or other entity representative; if by a partnership, execution of the certification must be in the partnership's name by a general partner.

**Applicant must not sign this form until all required services and fee information is disclosed.**

_____          _____
Signature of Authorized Representative of Applicant          Date

_____          _____
Print Name                                                  Title

SBA Form 159 (04-18) Previous Editions Obsolete                          Page 2 of 3

**Fee Disclosure and Compensation Agreement**
For use with 7(a) and 504 Loan Programs

OMB Control No. 3245-0201
Expiration Date: 08/31/2021

**Agent's Certifications**:  By signing this form, the undersigned Agent certifies that: (1) it has not and will not directly or indirectly charge or receive any payment from the Applicant in connection with the application for or making of the SBA loan except for services actually performed on the Applicant's behalf and identified in this form; (2) the information provided in this form accurately describes the types of services (s)he/it has provided to the Applicant or SBA Lender and the compensation described in this form is the only compensation that has been charged to or received from the Applicant or SBA Lender or that will be charged to the aforementioned parties for **services covered by this form**; (3) neither it nor any of the employees of its organization are currently debarred, suspended, proposed for debarment, declared ineligible or voluntarily excluded from participation in this transaction by any Federal department or Agency; and (4) if SBA deems any portion or all of the fees charged in connection with the application for or making of the loan to be unreasonable or prohibited, the Agent agrees to refund that amount to the Applicant.  If the certification is made by a legal entity (e.g. corporation, limited liability company), execution of the certification must be in the legal entity's name by a duly authorized officer or other entity representative; if by a partnership, execution of the certification must be in the partnership's name by a general partner.

_____     _____
Signature of Authorized Representative of Agent      Date

_____     _____
Print Name                                           Title

**SBA Lender's Certifications**:  The undersigned SBA Lender certifies that: (1) the representations of services rendered and the amounts charged as identified in this form are reasonable and satisfactory to it; (2) (s)he has no knowledge that any Agent, as defined in 13 CFR § 103.1, was engaged by, represented, or worked on behalf of the Applicant other than as disclosed above or in another executed compensation agreement (SBA Form 159); (3) any referral fees described above are the only referral fees paid by the SBA Lender to a referral agent in connection with this loan and were not charged directly or indirectly to the Applicant; (4) if SBA deems any portion or all of the fees charged in connection with the application for or making of the loan to be unreasonable or prohibited, the SBA Lender agrees to refund that amount to the Applicant; (5) it has consulted the System for Awards Management's (SAM) Excluded Parties List System or any successor system to ensure that the Agent identified above is not debarred, suspended, proposed for debarment, declared ineligible or voluntarily excluded from participation in this transaction by any Federal department or Agency; and (6) any fee it has charged is not a standardized amount and all fees charged to the Applicant comply with SBA Loan Program Requirements.

_____     _____
Signature of Authorized Representative of SBA Lender  Date

_____     _____
Print Name                                           Title

*Systems of Record Notification*:  Information obtained from this form is part of the Agency's Privacy Act Systems of Records, Loan Systems ("SOR 21") and may become part of SBA's System of Records for Suspension and Debarment Files ("SOR 36"). As such, this form and the information contained therein may be used, disclosed, or referred for the following purposes, among other things:

- To the Federal, State, local or foreign agency or professional organization which investigates, prosecutes, or enforces violations of statutes, rules, regulations, or orders, or which undertakes procurement of goods or services, when SBA determines that disclosure will promote programmatic integrity or protect the public interest.
- To SBA employees, contractors, interns, volunteers, and other regulators or legal authorities for the review of Loan Agent fees and activities and for the review of loans generated by Loan Agents (e.g. for performance and other trends).
- To GSA and the public for publication of Loan Agent suspensions, revocations, debarments, other enforcement actions, and exclusions in the System Award's Management's (SAM) Excluded Parties List System ("EPLS") or any successor system consistent with Executive Order 12549 and other applicable law.
- To other regulators, SBA employees, contractors, interns, and/or volunteers for regulatory purposes.
- See 77 FR 61467 (October 9, 2012), 77 FR 15835 (March 16, 2012), 74 FR 14890 (April 1, 2009), and as amended from time-to-time for additional routine uses.

PLEASE NOTE:  The estimated burden for completion of this form is 5 minutes per response. You are not required to respond to this information collection unless it displays a currently valid OMB approval number. Comments/questions on the burden estimate should be sent to U.S. SBA, Chief, Administration Information Branch, Washington, D.C. 201416, and Desk Officer for SBA, OMB, New Exec. Office Building, Room 10202, Washington, D.C. 20503. PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.

SBA Form 159 (04-18) Previous Editions Obsolete                          Page 3 of 3

# EXHIBIT B



**Special Report**
April 22, 2020

# Center for Plain English Accounting
### AICPA's National A&A Resource Center

## Small Business Loans Under the Payroll Protection Program
## Issues Related to CPA Involvement

*By: Kristy Illuzzi and Jim Brackens*

The CPEA has received several questions regarding CPAs assisting clients with applications, including working as Agents under the definition of the CARES Act and the Paycheck Protection Program (PPP), which provides forgivable loans to help small businesses cover fees including payroll, mortgage expenses, rent, and utilities.

We know there is frustration around providing services to small business clients as they apply for PPP loans being issued through the Small Business Administration (SBA). The AICPA's Private Companies Practice Section (PCPS) has been adding developments daily to their webpages, but we wanted to cover some of the more commonly asked questions and complexities that we have been hearing from members, including those related to acting as agents and whether performing certain services in association with these PPP loans would violate independence, create a conflict of interest, or result in receipt of a contingent fee.

<u>First Things First: See the Bigger Picture and Advise Clients</u>

Before we begin with the common issues surrounding the PPP loans, we want to offer this counsel to our members:

As clients deal with a cauldron of pandemic-imposed problems and uncertainties, and as they attempt to navigate a sea of government relief programs, CPAs must act as a trusted source of advice and guidance. Providing advice and guidance during challenging times is nothing new for CPAs. Businesses and organizations have deep relationships with their CPAs and normally look to them for assistance and reassurance. CPAs should step back and consider the best course of action for each client. Not every relief program or every course to maneuver through the arduous effects of the pandemic will fit every client. CPAs should take a thoughtful approach in helping each client find the financial assistance, loan and tax credit relief programs, and other solutions that make the most sense for each

client's unique circumstances. We encourage CPAs to provide these advisory services which are deemed to be outside the scope of loan processing application assistance as referred to within this report.

Acting as Agents and Agent Fees

One of the hottest topics related to these PPP loans is exactly what is intended by the term "agent" as used on the loan application. According to a Q&A document issued by the Treasury, an agent is an authorized representative and can be:

- An attorney
- An accountant
- A consultant
- Someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant
- Someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans
- A loan broker
- Any other individual or entity representing an applicant by conducting business with the SBA

There has been a lot of confusion as to whether CPA firms can act as agents for attest clients, and what acting as agents really entail. One of the key issues points to the fact that the Treasury defines an agent as an "authorized representative," which could imply that an agent is taking on a level of management responsibility.

There has been much discussion about whether acting as an agent for purposes of PPP loans was intended to meet a legal definition of agent (acting on behalf of another) or was meant to be a broader definition that would scope in CPAs providing nonattest services to clients. The AICPA ethics division has been carefully monitoring developments and continues to answer questions, and the Professional Ethics Executive Committee (PEEC) was recently asked to weigh in on the issue from an independence perspective.

As posted in an update on April 13, 2020, the AICPA made the following statement (in part):

"While the AICPA understands that a fee paid by a lender is referred to as an 'agent fee', we don't believe this should be an impediment to allowing CPAs to fulfill the intent of the CARES Act. Rather, the AICPA's Professional Ethics Executive Committee (PEEC) believes members may advise and assist their attest clients in understanding the information required to be submitted and in the determination of amounts to be included on the application, provided the member does not

prepare or sign the application form itself or perform other management responsibilities on behalf of the applicant."

*Practice Note:* CPAs should note, that even though the Treasury has outlined guidelines related to agency fees, there is a possibility that you will not be paid for your services, even when noting you are an agent to the application. Every bank seems to understand the rules regarding agents and fees a bit differently, and some are agreeing to pay CPAs for assisting while others are not agreeing to pay CPAs for assisting. It is important to discuss this issue with clients and the banks to ensure there is an understanding, preferably in writing, as to how and when any fees will be paid.

It is our understanding that many firms do not intend to charge clients for the PPP application process for several reasons:

- It is in the firm's interest that clients weather the economic crisis caused by the pandemic. Helping clients get any assistance possible will strengthen long-term relationship with clients.
- The application itself is fairly straight forward and can be completed by the small business. The only challenge is determining the average monthly payroll cost.
- Average payroll costs can easily be derived by any third-party payroll provider, plus any benefits the small business pays that comes from the general ledger. Payroll companies are not charging customers for this work.
- The PPP asks for a self-certification from the business and <u>not</u> any type of certification from the CPA, as may be the case in other loan packages. CPAs should not be providing any certification, as it isn't required according to the guidelines.

*CPEA Observation:* An additional complication is whether banks, in agreeing to pay CPAs for services, infer that CPAs are taking on certain client representations that could result in placing CPAs at risk. Some banks are agreeing to pay CPAs without requiring them to sign as authorized representatives (i.e., agents under the Code of Federal Regulations definition). However, it's possible those banks may assume CPAs are taking on certain client representations. The AICPA is working with the SBA, the American Bankers Association, and other key stakeholders to clarify this issue. However, in the interim, CPAs could be putting themselves at risk as some banks could make an assumption that paying CPA firms agent fees means they are acting as "authorized agents" or "authorized representatives" of attest clients. CPAs are encouraged to consult with professional liability carriers or legal counsel to understand any legal implications.

Contingent Fee Question Clarified

Some have asked whether fees set by Treasury to be paid to agents could be considered contingency fees under ET section 302 of the AICPA's Code of Professional Conduct. As a refresher, paragraph .01 of ET section 302 indicates the following:

> "A contingent fee is a fee established for the performance of any service pursuant to an arrangement in which no fee will be charged unless a specified finding or result is attained, or in which the amount of the fee is otherwise dependent upon the finding or result of such service. Solely for purposes of this rule, fees are not regarded as being contingent if fixed by courts or other public authorities, or, in tax matters, if determined based on the results of judicial proceedings or the findings of governmental agencies."

The AICPA made a statement on April 13, 2020, that they believe, considering substance over form, the fee paid by lenders is *not* a contingent fee. The amount of the loan is an objective mathematical calculation (based on payroll) with the amount of the fee set by the CARES Act. In addition, it is Congress' intent that all loans will be funded, so there is no need for any advocacy by anyone assisting the attest client to convince the lender to make the loan.

***CPEA Observation:*** While the AICPA has indicated they do not believe the fee paid by lenders would be considered a contingent fee, some state boards of accountancy could believe otherwise. We encourage CPAs to check with state boards before agreeing to accept agent fees to ensure there is agreement with the AICPA position.

Additional Independence Considerations

As noted earlier, CPAs may advise and assist attest clients in gathering information for the attest clients to prepare and submit loan applications to lenders without impairing independence. Additionally, if lenders pay CPAs "agent fees" for those services, CPAs are not, simply by nature of receiving fees, agents – nor does receipt of these fees constitute contingent fees.

PEEC believes that, simply advising or assisting attest clients in understanding the information gathering and lending application process under the PPP, even if "agent fees" are paid by lenders, would not constitute performing management responsibilities for purposes of applying the AICPA Code of Professional Conduct if CPAs do not in fact assume management responsibilities. In other words, assisting attest clients with COVID-19 PPP loan applications is a nonattest service. If CPAs comply with the interpretations of the Nonattest Services subtopic, independence will not be impaired.

Special Considerations Related to Assisting Attest Clients

As noted earlier, for attest clients, we suggest not signing as authorized representatives on PPP loan applications. Also, make no certifications as to the information the small business is providing with the application (this is covered in more detail in the "Other Requests of CPAs" section of this report). However, advising clients is totally appropriate, and we encourage it.

For opportunities to receive "agent fees" from banks for performing nonattest services related to client loan applications, we suggest considering contacting lenders before embarking on engagements and getting a written agreement related to the fees. There should be a conflict waiver in the agreement with the lender, just like there is in the loan assistance engagement letter with the client. Disclose these arrangements with clients as well.

The majority of the certifications and authorizations contained in the "Representations, Authorizations and Certifications" section of the PPP loan application are management responsibilities; the signature required on page 2 of the application should be made by the company applying for the loan or its authorized representative.

As noted earlier, signing as a client's authorized representative will impair independence because ability to exercise authority on behalf of a client has been accepted. This is a management responsibility.

Special Considerations Related to Nonattest Clients

For situations where CPAs choose to act as authorized representatives and receive agent fees from banks for nonattest clients, we suggest considering the following:

- Contact lenders before embarking on engagements and get written agreements related to the fees. There should be a conflict waiver in the agreement with the lender, just like there is in the loan assistance engagement letter with the client. Disclose these arrangements with clients as well.
- Generally, firms do not sign client loan applications. In instances where firms sign these applications, hold harmless/indemnification agreements from the clients related to client-provided information should be obtained, and should indicate the firm is not making or joining the client in making any of the client's certifications in the application. Many professional liability insurance carriers have examples of this language.
- Whether clients later may ask for attest services to be performed in conjunction with these PPP loans. See the practice note in the "Loan Reporting Considerations" section for additional information.

***Practice Note:*** Before signing PPP loan applications for nonattest clients, firms may want to consult with professional liability carriers or legal counsel to understand any legal implications there might be for signing these applications. Some professional liability insurance carriers have even developed sample engagement letters related to these services that include indemnification clauses.

CPA Firms Applying for PPP Loans

It should be noted that CPA firms may be eligible to apply for PPP loans if all of the SBA requirements are met, whereby a CPA might be preparing and signing the loan application on behalf of the firm. As long as the bank is not an attest client of the firm, this would not result in an independence violation under the Code of Professional Conduct.

Other Requests of CPAs

A small number of banks are requesting some form of third-party verification related to the PPP loan applications when CPAs are involved.  In circumstances where PPP lenders request this type of service of CPAs, reference should be made to the AICPA's *Third-Party Verification Toolkit for CPAs*.

Loan Forgiveness Considerations

Additional guidance is expected to be provided by Treasury to correctly determine the information required to substantiate that funds dispersed under these PPP loans were used in accordance with the SBA guidelines.

It is possible that entities will engage CPA firms to assist on the back end with the application for loan forgiveness as well, especially in cases where the CPAs assisted in some way with the initial application.

It could be that clients simply would engage CPAs to perform nonattest services, similar to how many of the loan applications are being done. However, when nonattest services are performed for attest clients (for example, an audit client), CPAs would need to follow Section 1.295*,* of the AICPA Code of Professional Conduct to not impair independence for purposes of attest engagements. If CPAs are not engaged to perform nonattest services, another option for service to attest clients would be to perform Agreed Upon Procedures (AUP) engagements in accordance with AT-C section 215.

For audits of financial statements for periods during which PPP loan transactions occurred, it goes without saying that those transactions should be audited and the auditor's risk assessment may likely identify heightened fraud risk in this area.

***Practice Note:*** One thing to consider when performing services in association with loan applications is whether clients would expect any attest services on the back end when

reporting to the bank. CPAs should be aware, if they choose to perform certain services related to these loan applications that would impair independence, they would not be permitted to perform any attest services on the back end with regard to reporting on how the loan proceeds were spent and whether that spending was in accordance with the SBA guidelines.

Conclusion and Additional Resources

The CPEA will continue to monitor issues and questions related to the A&A impacts of COVID-19 and stand ready to issue additional guidance as new developments arise. The AICPA also has a Coronavirus Resource Center to keep the profession up-to-date on this issue, including information on business continuation, economic impact, workforce issues and other resources to help members serve their clients. View a list of all available resources.

As always, the CPEA technical inquiry service is available for all CPEA members to answer inquiries on this topic as well as most other accounting and assurance topics. The inquiry service can be accessed on our website. For non-CPEA members, call the AICPA technical hotline at 1-888-777-7077.  Questions related to auditor independence (which certainly could arise in the current environment) should be directed to the AICPA Ethics Hotline at **1-888-777-7077** (select option 2, then 3) or ethics@aicpa.org.  CPEA refers all independence questions to the independence hotline.

Center for Plain English Accounting │ aicpa.org/CPEA │ cpea@aicpa.org

The CPEA provides non-authoritative guidance on accounting, auditing, attestation, and SSARS standards. Official AICPA positions are determined through certain specific committee procedures, due process and extensive deliberation. The views expressed by CPEA staff in this report are expressed for the purposes of providing member services and other purposes, but not for the purposes of providing accounting services or practicing public accounting. The CPEA makes no warranties or representations concerning the accuracy of any reports issued.

© 2020 Association of International Certified Professional Accountants. All rights reserved. For information about the procedure for requesting permission to make copies of any part of this work, please e-mail cpea@aicpa.org with your request. Otherwise, requests should be written and mailed to the Center for Plain English Accounting, AICPA, 220 Leigh Farm Road, Durham, NC 27707-8110.

# EXHIBIT C



**OMB Control Number: 3245-0407**
**Expiration Date: 9/30/2020**

## CARES Act Section 1102 Lender Agreement

_____ ("Lender") hereby agrees as a condition and in consideration of authorization by the United States Small Business Administration ("SBA") and the Department of Treasury for Lender to make Paycheck Protection Program SBA-guaranteed financing available as part of the Coronavirus Aid, Relief, and Economic Securities Act ("CARES Act") (P.L. 116-136) to eligible recipients, as follows (the "Agreement"):

**1. Lender Eligibility Requirements.**

Federally insured depository institutions, federally insured credit unions, and Farm Credit System institutions (other than the Federal Agricultural Mortgage Corporation) are eligible to participate in the Paycheck Protection Program unless they currently are designated in Troubled Condition by their primary federal regulator or are subject to a formal enforcement action by their primary federal regulator that addresses unsafe or unsound lending practices.

Lender attests that it is:

| | Initial below |
|---|---|
| A federally insured depository institution; OR | |
| A federally insured credit union; OR | |
| A Farm Credit System institution (other than the Federal Agricultural Mortgage Corporation) that applies the requirements under the Bank Secrecy Act and its implementing regulations as a federally regulated financial institution, or functionally equivalent requirements. | |

Lender attests that it is NOT:

| | Initial below |
|---|---|
| Designated in Troubled Condition by its primary federal regulator | |
| Subject to a formal enforcement action by its primary federal regulator that addresses unsafe or unsound lending practices | |

**Lender Information:**

| | | |
|---|---|---|
| Institution Name: | | |
| Headquarters (City, State): | | |
| Primary Federal Regulator (check one): | FRB | |
| | FDIC | |
| | OCC | |
| | NCUA | |
| | FCA | |
| Lender Identifier (provide any that apply) RSSD ID: | | |
| | FDIC Certificate ID: | |
| | OCC Charter No.: | |
| | NCUA Charter No.: | |

SBA Form 3506 (04-20)

**2. Application for Guaranty.** This Agreement governs only "covered loans," duly approved under delegated authority hereafter for guaranty by SBA, that are subject to the Paycheck Protection Program under the CARES Act, section 7(a)(36) of the Small Business Act, any rules or guidance that has been issued by SBA implementing the Paycheck Protection Program, or any other applicable Loan Program Requirements, as defined in 13 CFR § 120.10, as amended from time to time (collectively "PPP Loan Program Requirements").

**3. Approval of Guaranty.** Lender will process and approve covered loans under delegated authority from SBA. Lender assumes all obligations, responsibilities, and requirements associated with delegated processing of covered loans made under the Paycheck Protection Program. Any change in the terms or conditions stated in the loan authorization shall be made in accordance with PPP Loan Program Requirements. For purposes of making covered loans to an eligible recipient under the Paycheck Protection Program, Lender is responsible, to the extent set forth in the PPP Loan Program Requirements, for all decisions concerning the eligibility (including size) of a borrower for a covered loan. Lender may issue a covered loan approved under PPP procedures without prior SBA review and approval of the processing and underwriting of the loan by executing a PPP Authorization.

**4. Closing and Disbursement of Covered Loans.** Lender must close and disburse each covered loan in accordance with the terms and conditions of the PPP Authorization and PPP Loan Program Requirements. Lender must ensure that a note and all other Loan Documents (as defined in this paragraph) and additional documents are properly executed and take such other actions necessary to fulfill the requirements of the Paycheck Protection Program. SBA is entitled, at any time, to examine and obtain copies of all notes, certifications and documentation (herein, collectively, called "Loan Documents"), and all other records held by Lender which relate to covered loans made pursuant to the Paycheck Protection Program.

**5. Administration of Covered Loans.** Lender will hold the Loan Documents and receive all payments of principal and interest unless Lender is required to transfer or assign the note to SBA or a third party at SBA's direction. Lender must service and liquidate all covered loans made under the Paycheck Protection Program in accordance with PPP Loan Program Requirements. Except when SBA directs otherwise, all servicing actions will be the responsibility of Lender, which must follow accepted standards of loan servicing employed by prudent lenders.

**6. Purchase by SBA.** By making any written demand that SBA purchase the guaranteed portion of a loan, Lender will be deemed thereby to certify that the covered loan has been made, closed, serviced, and liquidated in compliance with the Paycheck Protection Program and PPP Loan Program Requirements. This Agreement will remain in full force and effect with respect to the covered loan after any purchase.

**7. Prohibited Fees.** Other than a fixed interest rate of 1.0% on the covered loan, Lender is not permitted to charge or receive any bonus, fee, prepayment penalty, commission or other payment or benefit from a borrower in connection with the making or servicing of any covered loan under the Paycheck Protection Program.

**8. Termination.**

A. A Lender's authority to make a covered loan under this Agreement will terminate on July 1, 2020. Either party may also terminate this Agreement upon not less than 10 days written notice by certified mail to the other party. Termination will not affect the guaranty of any covered loan previously authorized by SBA under the Paycheck Protection Program. It is understood and agreed that Lender shall continue to comply with the Paycheck Protection Program and PPP Loan Program Requirements with respect to any covered loan previously authorized by SBA, including but not limited to the servicing and liquidation of such covered loans. Termination by either party will not affect in any way Lender's continuing obligation to comply with this Agreement, the Paycheck Protection Program, and all PPP Loan Program Requirements with respect to any covered loan previously authorized by SBA under this Agreement. If this Agreement is terminated by either Lender or SBA, Lender hereby agrees that SBA may in its sole discretion transfer some or all of the covered loans and/or the servicing and liquidation of such covered loans and related fees or income to SBA or another entity approved by SBA. If SBA requires the transfer of Lender's covered loans, Lender must cooperate with SBA to transfer responsibility for servicing and liquidating of such covered loans.

B. The guaranty of any covered loan will be automatically terminated if Lender does not submit to SBA a demand to purchase the guaranty or a request to extend the maturity within one year after the maturity of the note.

**9. Assignment.** Lender may only assign or transfer its rights and obligations under this Agreement with SBA's prior written consent, which SBA may withhold in its sole discretion.

**10. Interpretation of this Agreement**.

A. This Agreement is subject to 7(a)(36) of the Small Business Act, including the Paycheck Protection Program and PPP Loan Program Requirements and will be interpreted and construed subject to, and to give full effect to, the broad scope of SBA's power and authority under the Small Business Act and those requirements. Lender consents and agrees to all rights and remedies available to SBA under the Small Business Act, the Paycheck Protection Program and PPP Loan Program Requirements, as each of those are amended from time to time, and any other applicable law.

B. To the best of its knowledge, Lender certifies that it is in compliance and will maintain compliance with all applicable requirements of the Paycheck Protection Program, and PPP Loan Program Requirements.

C. Lender understands that SBA's rights and powers under the Small Business Act, the Paycheck Protection Program and PPP Loan Program Requirements are in addition to, and exist independent of, this Agreement, and that nothing in this Agreement may be asserted against SBA under any circumstances to delay or prevent SBA's full exercise of its rights under applicable law.

D. Lender agrees to hold SBA harmless for any action taken by SBA in enforcing this Agreement, the Small Business Act, the Paycheck Protection Program and PPP Loan Program Requirements against Lender for any covered loan made under this Agreement.

E.  Lender agrees that any modification to this Agreement to be asserted against SBA or any exemption to be claimed from any provision of the Small Business Act, the Paycheck Protection Program, or PPP Loan Program Requirements is invalid, null, and void unless it is made in writing by an official of SBA authorized to grant such modification or exemption and was made after full disclosure to SBA of all material facts and circumstances.

F.  This Agreement is to be interpreted under and construed in accordance with federal law.

G.  This Agreement will inure to the benefit of, and be binding upon, the Lender's authorized successors and assigns.

By signing below, I hereby certify that I have the authority to execute this Agreement for the Lender on whose behalf I am signing, and that all representations made are true and correct to the best of my knowledge. I further acknowledge that on behalf of the Lender I have also submitted an Incumbency Certificate attached hereto. I further acknowledge that any false statements made to the U.S. Small Business Administration and Department of the Treasury can result in criminal prosecution under 18 U.S.C. 1001, 15 U.S.C. 645, and other provisions and imposition of civil money penalties under 31 U.S.C. 3729.

IN WITNESS WHEREOF, the undersigned has duly executed this Agreement.

_____
Name of Lender

_____          _____
Signature                                                                        Date

_____
Name and Title

ATTEST/WITNESS

I, _____, hereby represent and warrant that I am a duly elected or appointed Secretary or Officer of _____ (the "Lender") and that _____ is duly authorized and has the legal capacity to execute this Agreement on behalf of the Lender.

Signature: _____

Name and Title: _____

Attachment: Incumbency Certificate

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that the aforementioned document was filed through the Court's CM/ECF system on August 14, 2020. Parties of record may obtain a copy through the Court's CM/ECF system. The undersigned certifies that no party of record requires service of documents through any means other than the CM/ECF system.

/s/ Jeffrey E. Jamison